FEDERAL DEPOSIT INSURANCE CORPORATION, In its Corporate Capacity, and as Receiver of Great American Federal Savings Association, a federal savings association, San Diego, California, Plaintiff—Appellant,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; Those Certain Under Writers at Lloyd's London; Travelers Casualty & Surety Company of America, Defendants—Appellees.

Federal Deposit Insurance Corporation, In its Corporate Capacity, and as Receiver of Great American Federal Savings Association, a federal savings association, San Diego, California, Plaintiff—Appellee,

v.

Fidelity And Deposit Company Of Maryland; Those Certain Underwriters at Lloyd's London; Travelers Casualty & Surety Company of America, Defendants,

and

National Union Fire Insurance Company Of Pittsburgh, Pennsylvania, Defendant—Appellant.

Nos. 03–55752, 03–55876.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2005.

Decided May 18, 2005.

As Amended on Denial of Rehearing June 30, 2005.

See also 196 F.R.D. 375.

Melissa Satterwhite, Scott J. Watson, Jaclyn C. Taner, Federal Deposit Insurance Corporation, Washington, DC, Anthony J. Dain, Esq., David M. Plouff, Procopio Cory Hargreaves & Savitch, San Diego, CA, Victor L. Roy, III, Esq., Kyle M. Keegan, Susannah M. DeNicola, Tamra Glynn Vinson, Christopher D. Kiesel, Roy Kiesel Keegan & Denicola, APLC, Baton Rouge, LA, for Plaintiff—Appellant.

Michael R. Davisson, Esq., Michael J. Partos, Susan K. Sullivan, Esq., Sedgwick Detert Moran & Arnold, LLP, Los Angeles, CA, for Defendants—Appellees.

Kenneth A. Sagat, Thomas W. Hanlon, D'Amato & Lynch, New York, NY, David E. Reynolds, Esq., Kenneth D. Watnick, Esq., Lewis Brisbois Bisgaard & Smith, LLP, Los Angeles, CA, for Defendant—Appellant.

John R. Morris, Esq., Susan Elizabeth Basinger, Higgs, Fletcher & Mack LLP, San Diego, CA, Norbert J. Wegerzyn, Boundas Skarzynski Walsh & Black, Chicago, IL, Gary J. Valeriano, Esq., David T. DiBiase, Esq., Anderson McPharlin & Conners, LLP, Los Angeles, CA, for Defendants.

Before: KLEINFELD, WARDLAW and BERZON, Circuit Judges.

## MEMORANDUM *

In this case involving claims for payment under Great American Bank's ("GAB") fidelity bonds, the Federal Deposit Insurance Corporation ("FDIC") appeals the district court's orders of December 12, 2000, January 18, 2001, and January 29, 2001, granting partial summary judgment to defendants Fidelity & Deposit Insurance Company, National Union Insurance Company of Pennsylvania, Travelers Casualty & Surety Company, and Certain Underwriters at Lloyd's of London.

### I.

*Discovery of Dianne Lowe's Dishonesty*

 We agree with the district court that Fidelity & Deposit, National Union, and Travelers were entitled to summary judgment on the question of whether GAB discovered during the first bond period information concerning Dianne Lowe's dishonesty that would lead it to believe that it

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

had or would suffer a covered loss. We explained in *Gulf USA Corp. v. Federal Insurance Co.*, 259 F.3d 1049 (9th Cir. 2001), relying on the Supreme Court's decision in *American Surety Co. v. Pauly*, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977 (1898), that the standard in deciding whether a covered loss has been "discovered" during a bond period is both objective and subjective: "[A] loss is discovered once an insured has obtained facts that would cause a reasonable person to charge that there had been dishonesty or fraud resulting in loss." *Id.* at 1058. An insured must "ha[ve] knowledge—not simply suspicion—of the existence of such facts as would justify a careful and prudent man in charging another with fraud or dishonesty." *Id.* (citation and internal quotation marks omitted). Under California law "discovery of loss does not occur until the insured discovers facts showing that dishonest acts occurred and appreciates the significance of those facts; *suspicion of loss is not enough.*" *Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 564 (9th Cir.1991) (citation and internal quotation marks omitted, emphasis added).

Applying these standards, the bonding companies are entitled to summary judgment on GAB's discovery of loss during the first bond period. Both the quantum and quality of information about Lowe's dishonesty known by GAB on September 30, 1990, the end of the first bond period, were insufficient to constitute discovery of loss under California law. Clark "Moose" Miller's memorandum on his investigation into Lowe's misconduct, issued to Robert Kemper, GAB's CEO, on September 27, 1990, indicates only that Lowe had violated GAB's conflict of interest policy. Knowledge of Lowe's conflict of interest alone could not have alerted GAB to a loss or potential loss. Her purchases from customers at issue here, including those from Robert Childers and Brennan Katkov, Inc. ("BKI"), were questionable, but suggested only that she was trying to make profitable personal investments. As the Miller memorandum indicates, Lowe's purchases were at market value.

No contemporaneous evidence suggested that loans to the real estate developers from whom she made purchases would eventually be defaulted. We do not doubt that BKI and Childers expected to gain some benefit from their transactions with GAB because of their relationships with Lowe. But the range of potential benefits that a conflicted loan officer can give to borrowers is great, and only some involve actual or potential pecuniary loss. GAB certainly did not know that, as Lowe's later conviction establishes, Childers bribed Lowe.

In addition, we do not find the evidence indicating that Lowe changed the terms of Childers' tract construction loan and that James Andrews began "writing down" some loans that Lowe handled a sufficient basis for denying the bonding companies' summary judgment motions. Although the "net proceeds" change may well have benefitted Childers, GAB did not procure evidence during the first bond period indicating that the change would result in a covered loss to the bank. Moreover, there is no evidence that GAB had reason to question Lowe's claim that Ray Silliman, her supervisor, had approved the change. Indeed, Miller included that assertion in his September 27, 1990 report on Lowe. Similarly, the "writing down" of loans to BKI and Childers might have raised GAB's suspicions but did not give rise to discovery of a covered loss during the first bond period. "Writing down" loans was routine at GAB and therefore not sufficient evidence to arouse GAB's suspicions that it had suffered a *covered* loss. For example, Andrews also began "writing

down" loans made to John Mott during the same time period. The FDIC's claims regarding the Mott loans were, however, later dismissed, as the FDIC conceded that the losses on the Mott loans were not discovered within the first bond period.

We affirm the district court's orders granting summary judgment to Fidelity & Deposit, National Union, and Travelers on the discovery of loss issue.[1]

## II.

### *Prejudice to the Bonding Companies' Subrogation Rights*

■ The FDIC also seeks reversal of the district court's order granting summary judgment to the bonding companies on the claims related to John Dean and Robert Childers.[2] We affirm in part and reverse in part the district court's ruling that the FDIC impaired the bonding companies' subrogation rights and thereby materially breached the contracts.

Neither *Liberty Mutual Insurance Co. v. Altfillisch Construction Co.*, 70 Cal. App.3d 789, 139 Cal.Rptr. 91 (1977), nor *Graydon–Murphy Oldsmobile v. Ohio Casualty Insurance Co.*, 16 Cal.App.3d 53, 93 Cal.Rptr. 684 (1971), is helpful in resolving the issue before us. In *Altfillisch,* the prejudice to the insurer was clear, because Conexco, the insured, had entered an agreement with Altfillisch, its lessee, that "had the legal effect of cutting off [the insurer]'s opportunities for subrogation against ... Altfillisch, [and] breached an implied condition of the policy." *Id.* at 95. As the court concluded, in the context of that case, such an agreement was neces-

sarily prejudicial to the insurer, without need for further proof. *Id.* Conversely, the insurer had obviously not suffered any actual prejudice in *Graydon–Murphy,* because "the net effect of [the insured's] activity was to substitute a judgment in place of a cause of action. Mrs. Mason[, the dishonest employee,] remained liable for the unrecovered loss." 93 Cal.Rptr. at 690. This case does not present either clear-cut scenario.

Whether a claim of impairment to subrogation rights always requires a showing of actual prejudice under California law need not be decided in this case. Section 7 of all the bonds at issue governs this case. Section 7 provides: "The Insured shall do nothing after discovery of loss to prejudice [its] rights or causes of action."[3] By its terms, the cooperation clause, read in conjunction with the California Supreme Court's decision in *Campbell v. Allstate Insurance Co.,* 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963), requires a showing of *actual* prejudice. *Campbell'*s holding, of clear import to this case, was that "[a]n insurer may assert defenses based upon a breach by the insured of a condition of the policy *such as a cooperation clause,* but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby." *Id.*at 156 (emphasis added). The bonding companies therefore must show that the FDIC's actions with regard to relevant litigation substantially prejudiced them.

We turn, therefore, to the specific evidence of prejudice for each of the relevant claims.

---

1. We therefore do not reach National Union's conditional cross-appeal on the Scripps Legacy project.

2. The district court granted summary judgment to all four bonding companies on the Dean claims. Certain Underwriters at

Lloyd's do not remain parties to the Childers claims.

3. All bonds at issue in this case include the identical clause under Section 7 of Financial Institution Bond, Standard Form No. 24.

## A. Dean/Redhawk Claims

■ We affirm the district court's order granting summary judgment to the bonding companies on the Dean claims. The record reveals that the bonding companies suffered actual prejudice from the FDIC's settlement of the Dean claims without notifying the bonding companies, as the FDIC's disposal of the Redhawk remainder property, for just $10,200, constituted a significant loss. The property was later appraised for many millions more. The FDIC's argument that the low selling price did not prejudice the bonding companies because the property was sold for the market price at a public auction is not persuasive. Given notice, the bonding companies might have decided to hold onto the Redhawk remainder property and sell it later for a much greater sum. In addition, the FDIC's argument that its failure to release potential claims against Lawrence Heffner, the dishonest employee who caused GAB to sustain a loss, demonstrates that the bonding companies have not suffered prejudice is not well taken. A cause of action against an individual—as compared to a secured interest in real property—cannot provide an equivalent source of funds to offset the claimed loss on a $40 million promissory note. We therefore affirm the district court's order granting summary judgment to the defendants as to the Dean/Redhawk claims.

## B. Childers Claims

The evidence regarding the Childers claims is not as clear. The FDIC handled four separate properties following Childers' settlement of bankruptcy proceedings. The evidence concerning the Otay Mesa property establishes that the bonding companies established actual prejudice with respect to the FDIC's disposition of that property. The FDIC sold the Otay Mesa property for just $570,000. One year la-

ter, it was appraised for $5.8 million. As with the Redhawk remainder property, the bonding companies might have chosen to hold on to the property and sell it for a much greater sum when market conditions were more favorable. We therefore affirm the district court's grant of summary judgment on the Childers claims with regard to the Otay Mesa property.

■ We cannot on the record before us, however, reach any conclusion with regard to prejudice suffered on the Childers loans for the Hacienda Heights, Sypglass Terrace, and Colonies VI properties. The bonding companies have not offered evidence that the FDIC undersold its collateral, as it did for the Otay Mesa property. The bonding companies therefore have not established, as a matter of law, that the FDIC breached their contracts with the bonding companies, resulting in actual prejudice. We therefore reverse the district court's grant of summary judgment on the Childers claims with regard to these properties, and those claims are remanded for further proceedings before the district court.

## C. Summary

In sum, we affirm in part and reverse in part the district court's grant of summary judgment to the defendants on the subrogation issue. We remand to the district court only the claims concerning Childers' loans for the Hacienda Heights, Spyglass Terrace, and Colonies VI properties. Each party shall bear its own costs on appeal.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.